BRAD ARNETT, Plaintiff-Appellant, v. ENVIRONMENTAL SCIENCE AND ENGINEERING, INC., *et al.*, Defendants-Appellees.

Third District   No. 3—94—0707

Opinion filed September 12, 1995.—Modified on denial of rehearing November 22, 1995.

Law Office of Floyd C. Dailey, of Peoria (Floyd C. Dailey, of counsel), for appellant.

Keck, Mahin & Cate, of Peoria (Robert M. Riffle, of counsel), for appellees.

JUSTICE LYTTON delivered the opinion of the court:

Plaintiff Brad Arnett filed suit alleging that he was injured by exposure to fumes from mastic removers and chemical solvents while working on an asbestos abatement project. Arnett sued Environmental Science and Engineering, Inc. (ESE), and Charles Jenkins in their capacities as asbestos project manager and air sampling professional. The trial judge dismissed the case, and plaintiff filed this appeal. We affirm in part and reverse in part.

## I. FACTS

In his second amended complaint, plaintiff alleged that he was injured while working at an asbestos abatement project at the Canton

High School in Canton, Illinois. Plaintiff claimed that both defendants, ESE and Jenkins, served in dual capacities as asbestos project manager and air sampling professional for the project. The actual abatement work was performed by the contractor, C&C Environmental (C&C), for which plaintiff worked.

Plaintiff contended that his duties included pouring buckets of mastic remover and other chemical solvents into 55-gallon drums. While performing this task, plaintiff claims, he was exposed to and injured by the fumes. Plaintiff alleged that defendants owed a duty to exercise reasonable care for his safety, and they breached this duty by (a) failing to require proper ventilation, (b) failing to require use of proper breathing apparatus, and (c) failing to conduct proper air sampling.

Defendants filed a motion to dismiss pursuant to sections 2—615, 2—619 and 2—619.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2—615, 2—619, 2—619.1 (West 1992)), arguing that they owed no duty to plaintiff and that plaintiff's claims were barred under the doctrine of collateral estoppel. The collateral estoppel defense was premised upon the assertion that in plaintiff's previous worker's compensation case against his employer, C&C, he failed to prove that his injuries were proximately caused by the solvent fumes. The trial judge granted the motion to dismiss on both grounds.

## II. ANALYSIS

A court should not dismiss a cause of action on the pleadings unless it clearly appears that no set of facts can be proven which will entitle a plaintiff to recover. (*Burdinie v. Village of Glendale Heights* (1990), 139 Ill. 2d 501, 565 N.E.2d 654.) In determining whether the complaint alleges sufficient facts to establish a cause of action, we must accept as true all well-pleaded facts in the complaint and all reasonable inferences therefrom. (*Kolegas v. Heftel Broadcasting Corp.* (1992), 154 Ill. 2d 1, 607 N.E.2d 201.) Applying these standards, we conclude that while plaintiff has failed to establish a legal duty by the air sampling professional, the project manager did have a duty to act with reasonable care for the safety of plaintiff. We also hold that this suit is not barred by the doctrine of collateral estoppel.

## A. DUTY

In order to plead a cause of action for negligence, a plaintiff must allege the existence of a duty owed by defendant to plaintiff, a breach of that duty by defendant, and an injury to plaintiff proximately caused by defendant's breach of the duty. (*Ward v. K mart Corp.* (1990), 136 Ill. 2d 132, 554 N.E.2d 223.) The existence of a duty is a question of law to be determined by the court, and a circuit court's

ruling is reviewed under a *de novo* standard. *Henson v. Ziegler* (1995), 269 Ill. App. 3d 439, 646 N.E.2d 643.

■ Whether a duty exists depends on whether the defendant and the plaintiff stand in such a relationship to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. (*Kirk v. Michael Reese Hospital & Medical Center* (1987), 117 Ill. 2d 507, 513 N.E.2d 387.) In order to recover for a defendant's violation of a statute or rule designed to protect human life or property, the plaintiff must show: (1) the violation proximately caused plaintiff's injury; (2) plaintiff belonged to the class of persons whom the rule was intended to protect from injury; and (3) the kind of injury suffered by plaintiff was the kind which the rule sought to prevent. *Gouge v. Central Illinois Public Service Co.* (1991), 144 Ill. 2d 535, 582 N.E.2d 108.

■ The removal of asbestos from public schools is governed by the Asbestos Abatement Act (Act) (105 ILCS 105/1 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 122, par. 1401 *et seq.*)). Section 6(b)(2) of the Act empowers the Department of Public Health (Department) to promulgate rules governing asbestos project managers, air sampling professionals, asbestos workers, and the correct and safe performance of asbestos abatement. (105 ILCS 105/6(b)(2) (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 122, par. 1406(b)(2)).) Pursuant to this statutory authority, the Department has promulgated rules for the abatement of asbestos in schools. (77 Ill. Adm. Code § 855.10 *et seq.* (1991).) Under the rules, the responsibilities of the air sampling professional and the asbestos project manager are distinct. We shall now consider the specific responsibilities of each position.

## 1. ASBESTOS PROJECT MANAGER

The "asbestos project manager" is responsible for overseeing the asbestos abatement and project activities (77 Ill. Adm. Code § 855.20 (1991)), serving as the designated representative of the building owner (77 Ill. Adm. Code § 855.260(a)(3) (1991)). One of the project manager's responsibilities is to assist in evaluation of bids and the selection of the "contractor." 77 Ill. Adm. Code § 855.260(a)(3)(C) (1991).

The "contractor" is the entity that engages in corrective action services such as the actual asbestos abatement. (77 Ill. Adm. Code § 855.20 (1991).) Defendants assert, and we agree, that the asbestos abatement contractor is required to provide its workers with proper breathing apparatus, insure proper ventilation and provide negative air pressure in the work area. (77 Ill. Adm. Code §§ 855.10(c)(11), 855.80(c), 855.110, 855.120 (1991).) Defendants also argue the contractor's responsibilities relieve the project manager of any legal duty toward abatement workers exposed to fumes. We disagree.

Under the rules, the project manager has duties and obligations which are separate and distinct from those of the contractor. The project manager must observe project activities at all times during the course of abatement (77 Ill. Adm. Code § 855.260(a)(3)(F) (1991)) and go inside the abatement project at least once every two hours to inspect ongoing removal of asbestos-containing materials (77 Ill. Adm. Code § 855.260(a)(3)(K) (1991)). The project manager bears the responsibility for enforcing contract specifications (77 Ill. Adm. Code § 855.260(a)(3)(D) (1991)), and holding daily meetings with the contractor to solve problems and adjust procedures as appropriate (77 Ill. Adm. Code § 855.260(a)(3)(G) (1991)). Most important, the project manager also possesses the authority to stop any job activities not performed in accordance with the contract and the rules. 77 Ill. Adm. Code § 855.260(a)(4) (1991).

The project manager was not free to ignore the conditions existing at the abatement work site. In his complaint, plaintiff does not allege that the project manager failed to provide proper ventilation and breathing apparatus; rather, he claims that the project manager failed to *require* that they be provided. If, as defendants claim, it was the duty of the contractor to provide proper ventilation and breathing apparatus, then it was the duty of the project manager to require the contractor to do so.

### 2. AIR SAMPLING PROFESSIONAL

■ The "air sampling professional" is hired to conduct air monitoring. (77 Ill. Adm. Code § 855.20 (1991).) The Code defines "air sampling" as the process of measuring the *fiber* content of a known volume of air collected during a specific period of time (77 Ill. Adm. Code § 855.20 (1991)) and establishes a sampling schedule to determine *fiber* concentrations (77 Ill. Adm. Code § 855.260(b)(9) (1991)). The air sampling professional analyzes samples to confirm the complete removal, encapsulation, or enclosure of *asbestos-containing building materials.* 77 Ill. Adm. Code § 855.260(b)(5) (1991).

■ The purpose of the Act is not to provide a remedy for every worker injured in a jobsite mishap. (*Busnick v. Streator Township High School District No. 40* (1992), 234 Ill. App. 3d 647, 600 N.E.2d 46.) Plaintiff has failed to cite a single provision within the statute or rules that mandates that the air sampling professional is responsible for the detection or testing of fumes.

### B. COLLATERAL ESTOPPEL

The trial judge ruled that plaintiff should be collaterally estopped from asserting this cause of action because he previously failed to

prevail on the issue of proximate causation in his worker's compensation case against his employer.

■ Collateral estoppel is an equitable doctrine of judicial origin created to prevent relitigation of previously adjudicated claims; the doctrine is founded in principles of judicial economy. In determining whether the doctrine will be applied to a litigant, the court must consider three questions: (1) whether the issue decided in prior litigation is identical with the one presented in this case; (2) whether there had been a final judgment on the merits; and (3) whether the party against whom estoppel is asserted is a party or in privity with a party to the prior adjudication. *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, 499 N.E.2d 1373.

The parties agree on the pertinent facts, but disagree as to their legal impact. After the incident, plaintiff filed a worker's compensation claim against his employer, C&C. The Industrial Commission arbitrator ruled that plaintiff failed to establish that his ill-being was caused by exposure to the fumes. Plaintiff appealed to the Industrial Commission, which affirmed the arbitrator's ruling. Plaintiff then sought judicial review in the circuit court. The dispute was then settled, and the case was dismissed with prejudice.

Defendants have clearly satisfied the first and third prongs of the test enunciated in *Ballweg*. In the worker's compensation case against C&C, the proximate causation issue was the same and plaintiff was a party. Thus, the remaining issue is whether there was a final judgment on the merits of the causation issue in the prior litigation. We conclude that the finality requirement has not been met.

Where the decision of an Industrial Commission (Commission) arbitrator is reviewed, the decision of the Commission supersedes the arbitrator's decision. (*Department of Transportation v. Grawe* (1983), 113 Ill. App. 3d 336, 447 N.E.2d 467.) In *Grawe*, the arbitrator ruled that the employee was permanently disabled; however, that finding was not included in the Commission's subsequent settlement award. The employee then filed suit seeking reinstatement, and the employer argued that the employee should be estopped from now claiming that he was not permanently disabled. The appellate court held:

> "Because the settlement agreement contains no statement as to whether Grawe is permanently disabled, that question was obviously not decided by the Commission. Therefore, Grawe is not collaterally estopped from asserting that he is capable of resuming his former employment ***." *Grawe*, 113 Ill. App. 3d at 344, 447 N.E.2d at 472-73.

Similarly, in plaintiff's worker's compensation case, the judgment of the circuit court did not address whether the fumes proximately

caused plaintiff's injury. The judge simply approved the parties' settlement and dismissed the case.

■ The preclusive effect of a settlement or consent judgment depends upon the circumstances. A consent judgment is entitled to *res judicata* effect, thereby barring relitigation between the same parties or their privies for the same cause of action. (*Elliott v. LRSL Enterprises, Inc.* (1992), 226 Ill. App. 3d 724, 589 N.E.2d 1074.) However, a consent judgment is not entitled to collateral estoppel effect which would preclude relitigation of the same issue in a different claim or cause of action. See *Sleck v. Butler Brothers* (1964), 53 Ill. App. 2d 7, 202 N.E.2d 64; see also Annot., *Modern Views of State Courts as to Whether Consent Judgment is Entitled to Res Judicata or Collateral Estoppel Effect,* 91 A.L.R.3d 1170 (1979).

■ Sound logic dictates the distinction as to when consent judgments will be given preclusive effect. When a third party asserts collateral estoppel based upon a consent judgment, he is attempting to rely upon an administrative act of the court recording an agreement of the parties, rather than a judicial determination of the rights of the parties and the issues involved. (*Sleck,* 53 Ill. App. 2d at 13, 202 N.E.2d at 67.) Courts are therefore reluctant to give preclusive effect to consent judgments because the extent to which the issues were actually litigated and resolved is uncertain. (*Ekkert v. City of Lake Forest* (1992), 225 Ill. App. 3d 702, 588 N.E.2d 482.) On the other hand, parties to a consent judgment may assert the judgment for purposes of *res judicata* because this doctrine prohibits not only the relitigation of those issues actually raised in the first proceeding but also any issue which might have been raised. (*Elliott,* 226 Ill. App. 3d 724, 589 N.E.2d 1074.)

> "[A]n order entered by consent of the parties operates to the same extent for purposes of *res judicata* as a judgment entered after contest ***. Any other interpretation would effectively nullify all settlements because the same claim would be subject to the possibility of future litigation and double recovery." *Elliott,* 226 Ill. App. 3d at 728, 589 N.E.2d at 1077.

In plaintiff's worker's compensation case against C&C, the factual findings of the arbitrator and Commission were not final because they were appealed to the circuit court and that appeal was dismissed pursuant to settlement. (See *Grawe,* 113 Ill. App. 3d 336, 447 N.E.2d 467.) Accordingly, under these circumstances, the circuit court's judgment cannot serve as a basis for collaterally estopping plaintiff's claims against ESE and Jenkins.

## III. CONCLUSION

The judgment of the circuit court of Fulton County is affirmed as to the dismissal of plaintiff's claims against the defendants as air sampling professionals, reversed as to the dismissal of plaintiff's claims against the defendants as asbestos project managers, and remanded for further proceedings consistent with this decision.

Affirmed in part; reversed in part; and remanded.

BRESLIN and McCUSKEY, JJ., concur.